IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 17, 2014

**ALBERT WAYNE FRANCHEK, JR. v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Sumner County**
**No. 571-2013     Dee David Gay, Judge**

**No. M2013-02631-CCA-R3-PC - Filed June 25, 2014**

The Petitioner, Albert Wayne Franchek, Jr., appeals the Sumner County Criminal Court's denial of his petition for post-conviction relief from his guilty plea to selling one-half gram or more of a Schedule II controlled substance, a Class B felony, and resulting eight-year sentence.  On appeal, the Petitioner contends that he received the ineffective assistance of counsel and that he did not plead guilty knowingly and voluntarily.  Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which JERRY L. SMITH and ROGER A. PAGE JJ., joined.

William Michael Carter, Gallatin, Tennessee, for the appellant, Albert Wayne Franchek, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Lawrence Ray Whitley, District Attorney General; and Jason Elliott, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

On September 12, 2011, the Petitioner pled guilty in case number 49-2011 to three counts of selling cocaine and received three eight-year sentences, two of which were to be served consecutively for a total effective sentence of sixteen years.  On May 24, 2012, the Petitioner pled guilty in case number 33-2012, the subject of this appeal, to selling one-half gram or more of a Schedule II controlled substance, a Class B felony.  At the guilty plea hearing, the State advised the trial court that the Petitioner had agreed to an eight-year

sentence to be served consecutively to the sixteen-year sentence for "his parole violation in case number 49-2011." Regarding the facts of case number 33-2012, the State advised the court that on August 11, 2011, the Petitioner sold $70 worth of cocaine, which turned out to be one gram, to a confidential informant (CI). Upon questioning by the trial court, the Petitioner stated that he was fifty-four years old and only completed the eleventh grade but had a high school diploma. The trial court advised him that he was pleading guilty to a Class B felony, was receiving the minimum eight-year sentence in the range, and that he was going to serve the sentence consecutively to the previous sixteen-year sentence. The court asked the Petitioner if he knew what "consecutively" meant, and the Petitioner answered, "Means eight plus eight plus eight." The trial court explained that it meant he would serve the eight-year sentence "on top of" the sixteen-year sentence for a total effective sentence of twenty-four years. The trial court asked if the Petitioner had "[a]ny questions about that," and the Petitioner said no. The trial court approved the Petitioner's request for treatment in the Drug Court Treatment Program, questioned him further about his guilty plea and counsel's representation, and accepted his plea. The trial court sentenced him as a Range I, standard offender to eight years to be served consecutively to the previous sixteen-year sentence.

Almost one year later, on May 7, 2013, the Petitioner filed a pro se Motion to Reconsider Sentencing.[1] On May 22, 2013, the trial court filed an order, ruling that the motion was time-barred with regard to both cases pursuant to Rule 35, Tennessee Rules of Criminal Procedure, because the Petitioner filed the motion more than 120 days after his guilty pleas. However, the trial court decided to treat the motion as a petition for post-conviction relief in case number 33-2012. The trial court held that it could not treat the motion as a petition for post-conviction relief in case number 49-2011 because the petition was barred by the one-year statute of limitations. Subsequently, counsel for the Petitioner filed an amended petition for post-conviction relief, alleging, in pertinent part, that the Petitioner did not plead guilty knowingly in case number 33-2012 because he did not understand that he would have to serve the eight-year sentence consecutively to the sixteen-year sentence, that his effective twenty-four-year sentence for selling cocaine was "'extremely malicious,'" and that he received the ineffective assistance of counsel.

At the evidentiary hearing, trial counsel testified for the Petitioner that he was appointed to represent the Petitioner in case number 33-2012 in February, March, or April 2012. Counsel acknowledged that he received discovery in the case and that the Petitioner had been convicted of similar charges in late 2011. He said the Petitioner "wondered about the efficacy of having those two [cases] overlapping each other and whether that would be a thing that could be done lawfully." Counsel said he talked with the Petitioner about the Petitioner's concern and researched whether the State was "playing fair." Counsel identified

---

[1]The motion is not in the appellate record.

a copy of a letter he sent to the Petitioner on April 4, 2012, advising the Petitioner that while the State's "'[w]ithholding'" case number 33-2012 until after his guilty plea in case number 49-2011 "seemed underhanded," counsel's research did not reveal anything to prohibit the State from "'acting as it did.'" Counsel said he did not speak with the Petitioner's attorney in case number 49-2011 and did not file a motion to withdraw his guilty pleas in that case because counsel did not think filing such a motion would have made much of a difference. Counsel acknowledged that in his April 4 letter, he also advised the Petitioner that if the Petitioner went to trial in case number 33-2012, counsel thought that, based on the discovery materials, the jury would convict him, the trial court would sentence him to the maximum sentence in the range, and the court would order that the sentence be served consecutively to the sixteen-year sentence.

Trial counsel acknowledged that on April 11, 2012, he sent another letter to the Petitioner. In the letter, counsel referred to the State's "'solid proof'" and stated that the Petitioner had "'less than a little chance'" of a not-guilty verdict. Counsel testified that, in his professional opinion, the State had enough evidence to convict the Petitioner and that the trial court "would not look kindly" on the Petitioner due to the Petitioner's having recently been sentenced in case number 49-2011. On May 24, 2012, the Petitioner pled guilty. Counsel acknowledged that he did not meet with the Petitioner in jail and said that he did not see the Petitioner until the Petitioner was transported to Sumner County for the guilty plea hearing. He also acknowledged that although the judgment of conviction in case number 33-2012 stated that the Petitioner was on parole in case number 49-2011 when he committed the offense in case number 33-2012, the judgment was incorrect in that the Petitioner was on bond in case number 49-2011, not parole. Counsel acknowledged that the guilty plea hearing transcript for case number 33-2012 showed that the trial court had thought the Petitioner was on parole in case number 49-2011. Counsel said he should have correctly advised the trial court about the situation. Counsel stated that he could not remember the circumstances in case number 49-2011 and that a sixteen-year sentence for a one-count, Class B felony "would be surprising." However, he "suspected" case number 49-2011 involved multiple counts.

On cross-examination, trial counsel testified that he became licensed to practice law in 1991 and practiced criminal law exclusively, taking only appointed cases. Counsel identified a letter he wrote to the Petitioner on February 17, 2012. In the letter, counsel advised the Petitioner that the Petitioner was a Range II offender but incorrectly advised him that the range of punishment for a Range II offender convicted of a Class B felony was eight to twelve years. However, in the April 11 letter, counsel informed the Petitioner about the mistake and correctly told him that the range of punishment for a Range II offender convicted of a Class B felony was twelve to twenty years.

Trial counsel testified that on April 9, 2012, the State made an offer for the Petitioner

to plead guilty in case number 33-2012 in exchange for "20 years at [35] percent" and serve the sentence consecutively to the sixteen-year sentence in case number 49-2011. The next day, counsel met with the prosecutor about the offer, and the prosecutor modified the offer to "8 years at [35] percent." Counsel said that on the day of the plea hearing, he met with the Petitioner "probably longer than 10 or 15 minutes" and "probably saw him several times that day going back and forth between [the prosecutor] and [the Petitioner]." Ultimately, the prosecutor agreed to a sentence of "8 years at 30 percent." Counsel did not threaten or coerce the Petitioner, and the Petitioner never indicated that he did not know what he was doing. In the April 11 letter, counsel had explained mandatory consecutive sentencing to the Petitioner under Rule 32(c)(3), Tennessee Rules of Criminal Procedure. Counsel also went over consecutive sentencing with him on the day of the plea. Counsel identified a fourth letter he wrote to the Petitioner on April 29, 2012. The Petitioner had written to counsel, inquiring about the "Genesis program" and wanting a suspended sentence. Counsel researched the program and advised the Petitioner about it in the April 29 letter. Regarding the suspended sentence, counsel advised the Petitioner in the letter that he would ask the State about it but that the State's answer would be "'absolutely not.'" The Petitioner told counsel that he did not like the State's plea offer but never said he was being forced to accept it. Counsel said that he thought the Petitioner knew what he was doing when he pled guilty but that "I'm not a psychiatrist."

On redirect examination, trial counsel acknowledged that he represented the Petitioner about ninety days, that the Petitioner was in the Robertson County Jail during that time, and that he never met with the Petitioner in jail. He and the Petitioner communicated exclusively by written correspondence until the day of the guilty plea. Counsel said he thought he represented the Petitioner "competently and zealously."

Upon questioning by the post-conviction court, trial counsel testified that the Petitioner never indicated that he was not guilty. Therefore, "there wasn't a lot of investigation . . . to do." The Petitioner also never indicated that he wanted to go to trial. Counsel said he thought mandatory consecutive sentencing in case number 33-2012 was required whether the Petitioner was on parole or on bond in case number 49-2011.

The Petitioner testified that he filed the motion to reconsider his sentences because the total weight of all the drugs involved was less than one ounce and because the effective twenty-four-year sentence was "way out of balance" with the Tennessee Sentencing Act. He said he also filed the motion because the State intentionally withheld the charge in case number 33-2012 to "enhance me later." The Petitioner pled guilty in case number 49-2011 on September 12, 2011, but the trial court gave him a fourteen-day "furlough." The Petitioner arrived at the Robertson County Jail on September 26 to begin serving his sentence. He said that two days later, he was indicted in case number 33-2012. Upon being

-4-

questioned by the post-conviction court, the Petitioner acknowledged that a warrant was served on him on September 28; he was not indicted. He said, though, that the State "did know about it." Later, the Petitioner was indicted in case number 33-2012. He stated that if the State had handled both cases at the same time, he "would have had a better outcome."

The Petitioner testified that he was not transferred to prison until May 29, 2013. Therefore, he was in the Robertson County Jail the entire time counsel represented him in case number 33-2012. The Petitioner said that he and counsel corresponded through letters and that counsel "just told me, bottom line, I didn't have a chance." The Petitioner said he got the impression he was being "sold out." The Petitioner acknowledged that he did not see counsel "face-to-face" until May 24, 2012, the day of his guilty plea. The Petitioner and counsel met twice that day: one time for about ten minutes and one time for about five minutes. They only discussed the plea agreement. Counsel explained consecutive sentencing to the Petitioner, and the Petitioner understood it. During the plea hearing, the trial court asked the Petitioner if counsel gave him "good representation." The Petitioner said he told the trial court, "'To the best of my knowledge.'" However, the plea hearing transcript incorrectly showed that the Petitioner told the trial court, "'I trust his knowledge.'" The Petitioner said he did not say anything to the trial court about his sentence because he was "just scared" and "didn't know the law." The Petitioner acknowledged that at the time of the guilty plea, he had recently pled guilty in case number 49-2011, that he had been involved with the criminal system since 1996, and that he was a high school graduate.

The Petitioner testified that in 2009 and 2010, he was "working hard" as a truck driver and owned his own truck. However, in 2010, he was fired because he had an accident. He said that he could not find another job as a truck driver because he was a convicted felon and that he sold drugs because his bills were "piling up." He said he had a good work history but "just fell short of myself."

On cross-examination, the Petitioner testified that although he dropped out of high school, he had enough credits to graduate in 1976. He said he had pled guilty five or six times but that he did not question anything at the May 24, 2012 guilty plea hearing because he was too nervous to speak up. He acknowledged that trial counsel gave him discovery in the case. The Petitioner questioned whether the CI, who was on parole, could work as a CI, but counsel said that fact did not matter. The Petitioner said he was guilty in the case and acknowledged that eight years at thirty percent was a "pretty good" sentence. He said, though, that counsel "could have done more." For example, counsel told the Petitioner that he checked on the issue regarding the State's withholding the case, but counsel never consulted the Petitioner about the issue. Counsel also should have filed a petition for post-conviction relief, arguing that trial counsel in case number 49-2011 was ineffective, and should have made a counteroffer to the State's plea offer with "6 at 30." He acknowledged

that he asked counsel about a drug treatment program and that the trial court approved drug treatment during the plea hearing. At the Petitioner's request, counsel also asked that the trial court declare the Petitioner indigent, and the trial court did so.

Upon questioning by the post-conviction court, the Petitioner acknowledged having prior convictions for selling cocaine and being a felon in possession of a weapon. He said he did not get involved with drugs until he was thirty-seven years old. The court asked the Petitioner if counsel could have done anything more, and the Petitioner answered, "Yes. He could have filed a post-conviction."

At the conclusion of the evidentiary hearing, the post-conviction court noted that the post-conviction statute of limitations had run in case number 49-2011 and that the court had found "no real reason" to toll the statute of limitations. Regarding the post-conviction petition in case number 33-2012, the post-conviction court found trial counsel to be "very, very credible" and said counsel gave "very sound, very solid" advice to the Petitioner. The court stated that the State's first plea offer was "incredibly large" but that the Petitioner ended up being sentenced to the minimum sentence for a Range I offender. The court said, "Now, if that's not effective assistance of counsel, I don't know what is." Regarding whether the Petitioner's guilty plea was knowing and voluntary, the court stated that it had examined the guilty plea hearing transcript and concluded that the plea was made voluntarily with the Petitioner knowing "all the ramifications and repercussions." Thus, the court denied the petition for post-conviction relief.

## II. Analysis

On appeal, the Petitioner contends that if counsel had given his concerns about his plea in case number 49-2011 "more consideration," the Petitioner could have timely filed a petition for post-conviction relief in that case. Moreover, counsel could have "better addressed his concerns" if counsel had met with him in person prior to the day of the plea hearing. Regarding his plea on May 24, the Petitioner contends that he pled guilty unknowingly and involuntarily because counsel failed to "address the issues surrounding his prior conviction," failed to meet with him prior to the day of the plea hearing, and left the Petitioner "with a sense of helplessness with regard to his available options."

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Generally, [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component. Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Therefore, in order to comply with constitutional requirements a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). In order to ensure that a defendant understands the constitutional rights being relinquished, the trial court must advise the defendant of the consequences of a guilty plea and determine whether the defendant understands those

consequences. Boykin, 395 U.S. at 244.

In determining whether the petitioner's guilty pleas were knowing and voluntary, this court looks to the following factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

Regarding the Petitioner's claim that he received the ineffective assistance of counsel, the proof at the evidentiary hearing shows that the Petitioner and counsel did not meet in person until the day of the plea hearing. Although the better practice would have been for counsel to have met with his client before the day of the plea, they corresponded by letters, counsel investigated the Petitioner's concerns, and counsel provided discovery materials to the Petitioner. The Petitioner acknowledged at the evidentiary hearing that he was guilty of selling cocaine to the CI, and counsel obtained for the Petitioner the minimum sentence as a Range I, standard offender despite the fact that the Petitioner qualified as a Range II, multiple offender. Although the Petitioner told counsel that he did not like the terms of his plea, the Petitioner did not tell counsel that he did not want to accept the State's offer and did not voice any concerns about his plea in case number 49-2011. During the plea hearing for the instant case, the trial court asked the Petitioner if he was satisfied with counsel's services, and the Petitioner answered, "Yes, sir." The trial court also asked the Petitioner if there was anything he wanted counsel to do that counsel did not do, and the Petitioner answered, "No. I don't think he could have done any better." At the Petitioner's request, counsel sought and obtained approval from the trial court for drug treatment and indigent status. Therefore, we agree with the post-conviction court that the Petitioner has failed to show that he received the ineffective assistance of counsel.

Regarding the Petitioner's claim that he did not plead guilty knowingly and voluntarily, the Petitioner stated at the evidentiary hearing that he understood his plea involved serving the eight-year sentence consecutively to the sixteen-year sentence. Our review of the guilty plea hearing shows that the Petitioner advised the trial court that he had a high school diploma and that the trial court questioned him further about his plea. The

Petitioner advised the court that he had signed the written plea agreement; that he was not taking any medication in jail; that he could pass a drug test; and that counsel had reviewed with him the elements of the crime, the punishment for the crime, and the State's evidence against him. Therefore, we also agree with the post-conviction court that the Petitioner has failed to show that he did not plead guilty knowingly and voluntarily.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE